Jon A. Birmingham (Cal. Bar No. 271034)
jbirmi@fitcheven.com
**FITCH, EVEN, TABIN & FLANNERY LLP**
21700 Oxnard Street, Suite 1740
Woodland Hills, California 91367
Telephone: (818) 715-7025
Facsimile: (818) 715-7033

*Attorney for Plaintiff,*
LONE STAR SILICON INNOVATIONS LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| LONE STAR SILICON INNOVATIONS LLC, | Case No. 3:17-cv-07206 |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| STMICROELECTRONICS, INC., AND STMICROELECTRONICS N.V. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, Lone Star Silicon Innovations LLC ("Lone Star"), complains against Defendants STMicroelectronics N.V. and STMicroelectronics, Inc. (individually or collectively "STMicro" or "Defendants") as follows:

## NATURE OF ACTION

1.      This is an action for patent infringement of United States Patent Nos. 5,912,188; 6,153,933; and 6,388,330 (collectively, the "Patents in Suit") under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* through STMicro's importation, offer for sale, and sale of semiconductor devices.

## THE PARTIES

2.      Plaintiff Lone Star is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 8105 Rasor Blvd., Suite 210, Plano, TX 75024. Lone Star is in the business of licensing patented technology. Lone Star is the assignee of the Patents in Suit.

3.      Upon information and belief, Defendant STMicroelectronics N.V. (hereinafter "STMicro N.V.") is a corporation organized under the laws of The Netherlands, with its principal place of business at WTC Schiphol Airport, Schiphol Boulevard 265, 1118 BH Schiphol, The Netherlands. Defendant STMicro N.V. has a headquarters and operational offices located at 39 Chemin du Champ des Filles, 1228 Plan-Les-Ouates, Geneva, Switzerland. Defendant STMicro N.V. conducts business and is doing business in California and in this District and elsewhere in the United States, including, without limitation, using, promoting, offering to sell, importing, and/or selling integrated circuit devices that embody and/or are made using the patented technology, and enabling end-user purchasers to use such devices in this District. STMicro N.V.'s agent for service of process in the United States is Corporation Service Company (CSC), 80 State Street, Albany, New York, 12207.

4.      Defendant STMicroelectronics, Inc. (hereinafter "STMicro Delaware") is a corporation incorporated under the laws of Delaware with its Americas Region headquarters at 750 Canyon Drive, Suite 300, Coppell, TX 75019. STMicro Delaware also has places of business at 2755 Great America Way, 3rd Floor, Santa Clara, CA 95054 and 25215 Augustine Drive, Santa Clara, CA 95054. STMicro Delaware's agent for service of process in California is CT Corporation System, 818 W. 7th Street, Suite 930, Los Angeles, CA 90017. Defendant STMicro Delaware conducts business in California and in this District and elsewhere in the United States, including, without limitation, using, promoting, offering to

1  sell, importing and/or selling semiconductor devices and/or devices that incorporate such devices that

2  embody the patented technology, and enabling end-user purchasers to use such devices in this District.

**JURISDICTION AND VENUE**

4   5.     This action arises under the Patent Laws of the United States, Title 35 of the United States

5  Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

6  1338(a).

7   6.     On information and belief, Defendants are subject to this Court's specific and general

8  personal jurisdiction pursuant to due process and/or the California Long Arm Statute, due at least to their

9  substantial business conducted in this forum, directly and/or through intermediaries, including (i) having

10  solicited business in the State of California, transacted business within the State of California and

11  attempted to derive financial benefit from residents of the State of California, including benefits directly

12  related to the instant patent infringement causes of action set forth herein; (ii) having placed  their products

13  and services into the stream of commerce throughout the United States and having been actively engaged

14  in transacting business in California and in this District; and (iii) either alone or in conjunction with others,

15  having committed acts of infringement within California and in this District. On information and belief,

16  Defendants, directly and/or through intermediaries, have advertised (including through websites), offered

17  to sell, sold and/or distributed infringing products, and/or have induced the sale and use of infringing

18  products in the United States and in California. Defendants have, directly or through their distribution

19  network, purposefully and voluntarily placed such products in the stream of commerce knowing and

20  expecting them to be purchased and used by consumers in California and in this District. Defendants have

21  either committed direct infringement in California or committed indirect infringement based on acts of

22  direct infringement in California and from their locations in Santa Clara, CA. Further, on information and

23  belief, Defendants are subject to the Court's general jurisdiction, including from regularly doing or

24  soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue

25  from products and services provided to individuals in California and in this District.

26   7.     On information and belief, Defendants do one or more of the following with

27  semiconductor devices and/or devices that incorporate such devices that that they manufacture: (a) import

28  these devices into the United States for sale to customers, including customers in California; (b) sell them

---

or offer them for sale in the United States, including to customers in California; and (c) sell them to customers who incorporate them into products that such customers import, sell, or offer for sale in the United States, including in California.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendants have a regular and established place of business within this District and have committed acts of infringement within the District. Defendants maintain and operate at least two facilities within this District in Santa Clara. Defendants' acts of infringement within this District include, but are not limited to, selling and offering to sell infringing products within the District. Defendants' Santa Clara facilities have over 200 employees and host regional sales and technical marketing services for networking equipment, TV and monitor products, printers, CMOS devices, bipolar/CMOS/DMOS mixed signal devices, hard-disk technology, gaming and other consumer products. (*See* www.stmicroelectronics.com.cn/content/st_com/en/about/careers/st-

locations/americas/united_states/santa_clara.html). Without limitation, on information and belief, within this District, Defendants, directly and/or through intermediaries, have advertised (including through websites), offered to sell, sold and/or distributed infringing products, and/or have induced the sale and use of infringing products. In addition, venue is proper in this District for Defendant STMicro N.V. pursuant to 28 U.S.C. § 1391(c)(3) because it is not resident in the United States, and therefore may be sued in any judicial district.

## INTRADISTRICT ASSIGNMENT

9.     Pursuant to Civil L.R. 3-5(b) Lone Star notes that there are six cases involving at least one patent in common pending in the San Francisco Division before the Honorable William H. Alsup.

## THE PATENTS IN SUIT

10.     On June 15, 1999, U.S. Patent No. 5,912,188 ("the '188 patent"), entitled "Method Of Forming A Contact Hole In An Interlevel Dielectric Layer Using Dual Etch Stops," a copy of which is attached hereto as Exhibit A, was duly and legally issued. The '188 patent issued from U.S. patent application Serial Number 08/905,686 filed August 4, 1997, and discloses and relates to the design of and processes for fabricating semiconductor memory devices. The inventors assigned all right, title, and interest in the '188 patent to Advanced Micro Devices, Inc. (hereinafter "AMD"). AMD assigned its entire

1  right, title, and interest in the '188 patent to Lone Star, and Lone Star is the sole owner of all rights, title,

2  and interest in and to the '188 patent including the right to sue for and collect past, present, and future

3  damages and to seek and obtain injunctive or any other relief for infringement of the '188 patent.

4         11.      On November 28, 2000, U.S. Patent No. 6,153,933 ("the '933 patent"), entitled

5  "Elimination of Residual Materials in a Multiple-Layer Interconnect Structure," a copy of which is

6  attached hereto as Exhibit B, was duly and legally issued. The '933 patent issued from U.S. patent

7  application Serial Number 08/925,821 filed September 5, 1997, and discloses and relates to the design of

8  and processes for fabricating semiconductor devices. The inventors assigned all right, title, and interest in

9  the '933 patent to AMD. AMD assigned its entire right, title, and interest in the '933 patent to Lone Star,

10  and Lone Star is the sole owner of all rights, title, and interest in and to the '933 patent including the right

11  to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other

12  relief for infringement of the '933 patent.

13         12.      On May 14, 2002, U.S. Patent No. 6,388,330 ("the '330 patent"), entitled "Low

14  Dielectric Constant Etch Stop Layers In Integrated Circuit Interconnects," a copy of which is attached

15  hereto as Exhibit C, was duly and legally issued. The '330 patent issued from U.S. patent application

16  Serial Number 09/776,012 filed February 1, 2001, and discloses and relates to the design of and processes

17  for fabricating semiconductor devices. The inventors assigned all right, title, and interest in the '330 patent

18  to AMD. AMD assigned its entire right, title, and interest in the '330 patent to Lone Star, and Lone Star

19  is the sole owner of all rights, title, and interest in and to the '330 patent including the right to sue for and

20  collect past, present, and future damages and to seek and obtain injunctive or any other relief for

21  infringement of the '330 patent.

22  **DEFENDANTS' INFRINGING PRODUCTS AND METHODS**

23         13.      Defendants are in the business of manufacturing semiconductor devices. Using their own

24  processes and techniques, Defendants make, use, sell, offer for sale, and/or import into the United States

25  semiconductor devices, including discrete and standard commodity components, application specific

26  integrated circuits ("ASICs"), full custom devices and semi-custom devices and application-specific

27  standard products ("ASSPs"), CMOS, Bi-CMOS, bipolar and non-volatile memory, fully depleted silicon

28  on insulator ("FD-SOI"), radio frequency silicon-on-insulator ("RF-SOI"), diffused metal-on-silicon

oxide semiconductor ("DMOS"), and silicon carbide ("SiC") integrated circuit devices and products incorporating such devices. Defendants' products are used in a variety of industrial, automotive, and consumer electronics, including mobile phones, IoT devices, power conversion products, metering devices for smart grids, tablets, computers, cameras, set-top boxes, global positioning receivers, data loggers, sports accessories, and networking devices. Defendants also provide a FD-SOI Technology Platform to support standard cells, memories, IO (input/output) libraries, clock generators, and specific IPs, which are used as building blocks in different chip designs. Defendants' sales in the U.S. and North America are made through Defendant STMicro Delaware.

14.     Despite not having a license to the '188 and '933 patents, Defendants have used the semiconductor fabrication methods claimed therein in making semiconductor devices and have used, sold, offered for sale, and imported in the United States semiconductor devices manufactured using such claimed methods. Despite not having a license to the '330 patents, Defendants' semiconductor devices adopt the designs claimed by those patents.

**FIRST CAUSE OF ACTION – INFRINGEMENT OF THE '188 PATENT**

15.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 14, as if fully set forth herein.

16.     Defendants directly and/or through their subsidiaries, affiliates, agents, and/or business partners, have in the past and continue to directly infringe the '188 patent pursuant to 35 U.S.C. § 271(g) by importing, using, selling, or offering to sell semiconductor devices in the United States made using the methods claimed in the '188 patent, including at least claims 3, 11-13, and 19. On information and belief, semiconductor devices manufactured by Defendants and/or other related entities and/or business partner foundries, are made using a process that practices claims 3, 11-13, and 19 including the steps of: (a) providing a semiconductor substrate; (b) forming a gate over the substrate; (c) forming a source/drain region in the substrate; (d) providing a source/drain contact electrically coupled to the source/drain region; (e) forming an interlevel dielectric layer that includes first, second and third dielectric layers over the source/drain contact; (f) forming an etch mask over the interlevel dielectric layer; (g) applying a first etch which is highly selective of the first dielectric layer with respect to the second dielectric layer through an opening in the etch mask using the second dielectric layer as an etch stop, to form a first hole in the first

dielectric layer that extends to the second dielectric layer without extending to the third dielectric layer; (h) applying a second etch which is highly selective of the second dielectric layer with respect to the third dielectric layer through the opening in the etch mask using the third dielectric layer as an etch stop, to form a second hole in the second dielectric layer that extends to the third dielectric layer without extending to the source/drain contact; and (i) applying a third etch which is highly selective of the third dielectric layer with respect to the source/drain contact through the opening in the etch mask, to form a third hole in the third dielectric layer that extends to the source/drain contact, such that the first, second and third holes in combination provide a contact hole in the interlevel dielectric layer.

17.     Defendants directly and/or through their subsidiaries, affiliates, agents, and/or business partners, have also in the past and continue to directly infringe the '188 patent, including at least claims 3, 11-13, and 19, pursuant to 35 U.S.C. § 271(g) by importing, using, selling, or offering to sell semiconductor devices in the United States made using the methods claimed in the '188 patent. The semiconductor devices manufactured by Defendants and/or other entities owned and controlled by Defendants or by third-party partner foundries under contract with Defendants, are made using a process that practices the claims of the '188 patent. Defendants directly infringe when they import, use, sell, or offer for sale in the United States semiconductor devices made using the claimed methods.

18.     Defendants have been and are engaged in one or more of these direct infringing activities related to their semiconductor devices, including at least their 5869BA – 4Mp, 2.0μm Pixel Pitch Back Illuminated CMOS Image Sensor, and any other semiconductor devices made using a substantially similar process and including transistors having a contact hole extending through first, second, and third dielectric layers to a source/drain contact formed using a process involving dual etch stops in according with the methods of claims 3, 11-13, and 19 of the '188 patent ("'188 Accused Products").

19.     Defendants, directly and/or through their subsidiaries, affiliates, agents, and/or business partners, have been and are now indirectly infringing the '188 patent, including at least claims 3, 11-13, and 19, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. Defendants have actual notice of the '188 patent and the infringement alleged herein on or about November 14, 2016, which was the date that Lone Star's counsel sent a letter to Defendants, attention Raj Krishnan, providing notice of Defendants' infringement of the '188 patent. In addition, upon information

and belief, Defendants have numerous lawyers and other active agents of Defendants and of their owned and controlled subsidiaries who regularly review patents and published patent applications relevant to technology in the fields of the Patents in Suit, specifically including patents directed to semiconductor devices issued to competitors such as AMD, the original assignee of the '188 patent. Upon information and belief, Defendants are assignees of 1,862 patents, including at least 15 patents prosecuted in the USPTO in the same classifications as the '188 patent, providing Defendants intimate knowledge of the art in fields relevant to this civil action. The timing, circumstances and extent of Defendants obtaining actual knowledge of the '188 patent prior to the commencement of this lawsuit will be confirmed during discovery.

20.    Upon gaining knowledge of the '188 patent, it was, or became, apparent to Defendants that the manufacture, sale, importation, offer for sale, and use of their '188 Accused Products result in infringement of the '188 patent. Upon information and belief, Defendants have continued and will continue to engage in activities constituting inducement of infringement, notwithstanding their knowledge, or willful blindness thereto, that the activities they induce result in infringement of the '188 patent.

21.    The '188 Accused Products are intended for integration into products known to be sold widely in the United States. Defendants make semiconductor devices using methods claimed in the '188 patent, which devices infringe when they are imported into, or sold, used, or offered for sale in, the United States. Defendants indirectly infringe by inducing customers (such as makers of mobile devices, cameras, and other devices) to import products that integrate semiconductor devices made using the methods claimed in the '188 patent, or to sell or use such products, or offer them for sale, in the United States.

22.    Defendants encourage customers, resellers, OEMs, or others to import into the United States and sell and use in the United States the '188 Accused Products made using the methods claimed in the '188 patent with knowledge and the specific intent to cause the acts of direct infringement performed by these third parties. On information and belief, after Defendants obtained knowledge of the '188 patent, the '188 Accused Products have been and will continue to be imported into the United States and sold in large volumes by themselves and by others, such as customers, distributors, and resellers. Defendants are aware that the '188 Accused Products are always made using the same fabrication methods under

1    Defendants' direction and control such that Defendants' customers will infringe one or more claims of the

2    '188 patent by incorporating such semiconductor devices in other products, and that subsequent

3    importation, sale, and use of such products in the United States would be a direct infringement of the '188

4    patent. Therefore, Defendants are aware that their customers will infringe the '188 patent by importing,

5    selling, and using the products supplied by Defendants.

6           23.      Defendants directly benefit from and actively and knowingly encourage customers',

7    resellers', and users' importation of these products into the United States and sale and use within the

8    United States. Defendants actively encourage customers and downstream users, OEMs, and resellers to

9    import, use, and sell in the United States the '188 Accused Products that they manufacture and supply,

10    including through advertising, marketing, and sales activities directed at United States sales. On

11    information and belief, Defendants are aware of the size and importance of the United States market for

12    customers of Defendants' products, and also distribute or supply these products intended for importation,

13    use, and sale in the United States. Defendants routinely market their infringing semiconductor products to

14    third parties for inclusion in products that are sold to customers in the United States, as well as directly to

15    end-user customers. For example, Defendants have publicly stated that their semiconductor devices are

16    primarily targeted for use in industrial, automotive, and consumer electronics, including mobile phones,

17    tablets, computers, cameras, set-top boxes, global positioning receivers, data loggers, sports accessories,

18    networking devices, IoT devices, power conversion devices, and metering devices for smart grids. Further,

19    Defendants have publicly stated that their CMOS image sensor products are primarily targeted for imaging

20    applications in the automotive, security, gaming, medical, and high-end traditional camera markets, of

21    whose products are widely sold and used in the United States. Defendants have numerous direct sales,

22    distributors, and reseller outlets for these products in the United States. Defendants' marketing efforts

23    show that they have specifically intended to and have induced direct infringement in the United States.

24           24.      Defendants also provide OEMs, manufacturers, importers, resellers, customers, and end

25    users instructions, user guides, and technical specifications on how to incorporate the '188 Accused

26    Products into electronics products that are made, used, sold, offered for sale in, and/or imported into the

27    United States. When OEMs, manufacturers, importers, resellers, customers, and end users follow such

28    instructions, user guides, and technical specifications and embed the products in end products and make,

use, offer to sell, sell, or import them into the United States, they directly infringe one or more claims of the '188 patent. Defendants know that by providing such instructions, user guides, and technical specifications, OEMs, manufacturers, importers, resellers, customers, and end users follow them, and therefore directly infringe one or more claims of the '188 patent. Defendants thus know that their actions actively induce infringement.

25.     Defendants have engaged and continue to engage in additional activities to specifically target the United States market for the '188 Accused Products and actively induce OEMs, manufacturers, importers, resellers, customers, and end users to directly infringe one or more claims of the '188 patent in the United States. For example, Defendants have showcased their CMOS image sensor technologies at various industry events and through written materials distributed in the United States, in an effort to encourage various OEMs, manufacturers, importers, resellers, customers, and end users to include the infringing technology in their computers, mobile devices, cameras and other products. These events are attended by the direct infringers mentioned above and generally by companies that make, use, offer to sell, sell, or import in the United States products that use semiconductor devices such as those made by Defendants.

26.     Defendants derive significant revenue by selling their semiconductor products to third parties who directly infringe the '188 patent in the United States.

27.     Defendants' extensive sales and marketing efforts, sales volume, and partnerships all evidence their intent to induce companies to infringe one or more claims of the'188 patent by, using, offering to sell, selling, or importing products that incorporate the '188 Accused Products in the United States. Defendants have had specific intent to induce infringement or have been willfully blind to the direct infringement they are inducing.

28.     Defendants' direct and indirect infringement of the '188 patent has injured Lone Star, and Lone Star is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless they cease their infringing activities, Defendants will continue to injure Lone Star by infringing the '188 patent.

29.     On information and belief, Defendants acted egregiously and with willful misconduct in that their actions constituted direct or indirect infringement of a valid patent, and this was either known

1  or so obvious that Defendants should have known about it. Defendants continue to infringe the '188 patent

2  by using, selling, offering for sale, and importing in the United States the '188 Accused Products and to

3  induce the direct infringement of others performing these acts, or they have acted at least in reckless

4  disregard of Lone Star's patent rights. On information and belief, Defendants will continue their

5  infringement notwithstanding actual knowledge of the '188 patent and without a good faith basis to believe

6  that their activities do not infringe any valid claim of the '188 patent. All infringement of the '188 patent

7  following Defendants' knowledge of the '188 patent is willful and Lone Star is entitled to treble damages

8  and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

9  **SECOND CAUSE OF ACTION – INFRINGEMENT OF THE '933 PATENT**

10  30.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 14, as

11  if fully set forth herein.

12  31.    Defendants, directly and/or through their subsidiaries, affiliates, agents, and/or business

13  partners, have in the past and continue to directly infringe the '933 patent pursuant to 35 U.S.C. § 271(g)

14  by importing, using, selling, or offering to sell semiconductor devices in the United States made using the

15  methods claimed in the '933 patent, including at least claims 5-12. On information and belief,

16  semiconductor devices manufactured by Defendants and/or other related entities and/or business partner

17  foundries, are made using a process that practices claims 5-12 including the steps of: (a) forming a first

18  layer interconnect having a first dielectric layer though which a first layer conductor  extends; (b) forming

19  a second layer interconnect on the first layer interconnect, the second layer interconnect having a second

20  layer dielectric through which at least one second layer conductor extends, by forming the second layer

21  dielectric to a first thickness and substantially planarizing the second layer dielectric to reduce the first

22  thickness to a second thickness prior to patterning the second layer dielectric; (c) patterning the second

23  layer dielectric to form an etched opening; and (d) filling the etched opening with a conductive material

24  to form the second layer conductor.

25  32.    Defendants directly and/or through their subsidiaries, affiliates, agents, and/or business

26  partners, have also in the past and continue to directly infringe the '933 patent, including at least claims

27  5-12, pursuant to 35 U.S.C. § 271(g) by importing, using, selling, or offering to sell semiconductor devices

28  in the United States made using the methods claimed in the '933 patent. The semiconductor devices

1  manufactured by Defendants and/or other entities owned and controlled by Defendants or by third-party

2  partner foundries under contract with Defendants, are made using a process that practices the claims of

3  the '933 patent. Defendants directly infringe when they import, use, sell, or offer for sale in the United

4  States semiconductor devices made using the claimed methods.

5         33.       Defendants have been and are engaged in one or more of these direct infringing activities

6  related to their semiconductor devices, including at least their CMOSIS X1000 CMOS Image Sensor, and

7  any other semiconductor devices having first and second interconnect layers designed in accordance with

8  claims 5-12 of '933 patent and having a substantially similar design ("the '933 Accused Products").

9         34.       Defendants, directly and/or through their subsidiaries, affiliates, agents, and/or business

10 partners, have been and are now indirectly infringing the '933 patent, including at least claims 5-12,

11 pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others.

12 Defendants had actual notice of the '933 patent and the infringement alleged herein on or about November

13 14, 2016, which was the date that Lone Star's counsel sent a letter to Defendants, attention Raj Krishnan,

14 providing notice of Defendants' infringement of the '933 patent. In addition, upon information and belief,

15 Defendants have numerous lawyers and other active agents of Defendants and of their owned and

16 controlled subsidiaries who regularly review patents and published patent applications relevant to

17 technology in the fields of the Patents in Suit, specifically including patents directed to semiconductor

18 devices issued to competitors such as AMD, the original assignee of the '933 patent. Upon information

19 and belief, Defendants are assignees of 1,862 patents, including at least 23 patents prosecuted in the

20 USPTO in the same classifications as the '933 patent, providing Defendants intimate knowledge of the art

21 in fields relevant to this civil action. The timing, circumstances, and extent of Defendants obtaining actual

22 knowledge of the '933 patent prior to the commencement of this lawsuit will be confirmed during

23 discovery.

24        35.       Upon gaining knowledge of the '933 patent, it was, or became, apparent to Defendants

25 that the manufacture, sale, importing, offer for sale, and use of their '933 Accused Products result in

26 infringement of the '933 patent. Upon information and belief, Defendants have continued and will

27 continue to engage in activities constituting inducement of infringement, notwithstanding their

28

1   knowledge, or willful blindness thereto, that the activities they induce result in infringement of the '933

2   patent under 35 U.S.C. § 271(b).

3           36.     The '933 Accused Products are intended for integration into products known to be sold

4   widely in the United States. Defendants make semiconductor devices that embody the inventions claimed

5   in the '933 patent, which devices infringe when they are imported into, or sold, used, or offered for sale

6   in, the United States. Defendants indirectly infringe by inducing customers (such as makers of mobile

7   devices, cameras, and other devices) to import products that integrate semiconductor devices embodying

8   inventions claimed in the '933 patent, or to sell or use such products, or offer them for sale, in the United

9   States.

10          37.     Defendants encourage customers, resellers, OEMs, or others to import into the United

11  States and sell and use in the United States the '933 Accused Products embodying inventions claimed in

12  the '933 patent with knowledge and the specific intent to cause the acts of direct infringement performed

13  by these third parties. On information and belief, after Defendants obtained knowledge of the '933 patent,

14  the '933 Accused Products have been and will continue to be imported into the United States and sold in

15  large volumes by themselves and by others, such as customers, distributors, and resellers. Defendants are

16  aware that the '933 Accused Products are integral components of the computer, camera, and mobile

17  products incorporating them, that the infringing semiconductor devices are built into the computer and

18  other products, and cannot be removed or disabled by a purchaser of the consumer products containing

19  the infringing devices, such that Defendants' customers will infringe one or more claims of the '933 patent

20  by incorporating such semiconductor devices in other products, and that subsequent importation, sale, and

21  use of such products in the United States would be a direct infringement of the '933 patent. Therefore,

22  Defendants are aware that their customers will infringe one or more claims of the '933 patent by selling,

23  offering for sale, importing, and/or using the products as-sold and as-marketed by Defendants.

24          38.     Defendants directly benefit from and actively and knowingly encourage customers',

25  resellers', and users' importation of these products into the United States and sale and use within the

26  United States. Defendants actively encourage customers and downstream users, OEMs, and resellers to

27  import, use, and sell in the United States the '933 Accused Products that they manufacture and supply,

28  including through advertising, marketing, and sales activities directed at United States sales. On

Complaint for Patent Infringement
Case No. 3:17-cv-07206                                                                                    12

1 information and belief, Defendants are aware of the size and importance of the United States market for

2 customers of Defendants' products, and also distribute or supply these products intended for importation,

3 use, and sale in the United States. Defendants routinely market their infringing semiconductor devices to

4 third parties for inclusion in products that are sold to customers in the United States, as well as directly to

5 end-user customers. For example, Defendants have publicly stated that their semiconductor devices are

6 primarily targeted for use in industrial, automotive, and consumer electronics, including mobile phones,

7 tablets, computers, cameras, set-top boxes, global positioning receivers, data loggers, sports accessories,

8 networking devices, IoT devices, power conversion devices, and metering devices for smart grids. Further,

9 Defendants have publicly stated that their CMOS image sensor products are primarily targeted for imaging

10 applications in the automotive, security, gaming, medical, and high-end traditional camera markets, of

11 whose products are widely sold and used in the United States. Defendants have numerous direct sales,

12 distributors, and reseller outlets for these products in the United States. Defendants' marketing efforts

13 show that they have specifically intended to and have induced direct infringement in the United States.

14      39.     Defendants also provide OEMs, manufacturers, importers, resellers, customers, and end

15 users instructions, user guides, and technical specifications on how to incorporate the '933 Accused

16 Products into electronics products that are made, used, sold, offered for sale in, and/or imported into the

17 United States. When OEMs, manufacturers, importers, resellers, customers, and end users follow such

18 instructions, user guides, and technical specifications and embed the products in end products and make,

19 use, offer to sell, sell, or import them into the United States, they directly infringe one or more claims of

20 the '933 patent. Defendants know that by providing such instructions, user guides, and technical

21 specifications, OEMs, manufacturers, importers, resellers, customers, and end users follow them, and

22 therefore directly infringe one or more claims of the '933 patent. Defendants thus know that their actions

23 actively induce infringement.

24      40.     Defendants have engaged and continue to engage in additional activities to specifically

25 target the United States market for the '933 Accused Products and actively induce OEMs, manufacturers,

26 importers, resellers, customers, and end users to directly infringe one or more claims of the '933 patent in

27 the United States. For example, Defendants have showcased their CMOS image sensor technologies at

28 various industry events and through written materials distributed in the United States, in an effort to

1    encourage various OEMs, manufacturers, importers, resellers, customers, and end users to include the

2    infringing technology in their computers, mobile devices, removable storage devices, and other products.

3    These events are attended by the direct infringers mentioned above and generally by companies that make,

4    use, offer to sell, sell, or import in the United States products that use semiconductor devices such as those

5    made by Defendants.

6        41.    Defendants derive significant revenue by selling the '933 Accused Products to third

7    parties who directly infringe the '933 patent in the United States.

8        42.    Defendants' extensive sales and marketing efforts, sales volume, and partnerships all

9    evidence their intent to induce companies to infringe one or more claims of the '933 patent by, using,

10   offering to sell, selling, or importing products that incorporate the '933 Accused Products in the United

11   States. Defendants have had specific intent to induce infringement or have been willfully blind to the

12   direct infringement they are inducing.

13       43.    Defendants' direct and indirect infringement of the '933 patent has injured Lone Star,

14   and Lone Star is entitled to recover damages adequate to compensate for such infringement pursuant to

15   35 U.S.C. § 284. Unless they cease their infringing activities, Defendants will continue to injure Lone Star

16   by infringing the '933 patent.

17       44.    On information and belief, Defendants acted egregiously and with willful misconduct in

18   that their actions constituted direct or indirect infringement of a valid patent, and this was either known

19   or so obvious that Defendants should have known about it. Defendants continue to infringe the '933 patent

20   by using, selling, offering for sale, and importing in the United States the '933 Accused Products and to

21   induce the direct infringement of others performing these acts, or they have acted at least in reckless

22   disregard of Lone Star's patent rights. On information and belief, Defendants will continue their

23   infringement notwithstanding actual knowledge of the '933 patent and without a good faith basis to believe

24   that their activities do not infringe any valid claim of the '933 patent. All infringement of the '933 patent

25   following Defendants' knowledge of the '933 patent is willful and Lone Star is entitled to treble damages

26   and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

27

28

1    **THIRD CAUSE OF ACTION – INFRINGEMENT OF THE '330 PATENT**

2    45.    Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 to 14, as

3    if fully set forth herein.

4    46.    Defendants, directly and/or through their subsidiaries, affiliates, agents, and/or business

5    partners, have in the past and continue to directly infringe the '330 patent, including at least claims 1, 4,

6    and 5, pursuant to 35 U.S.C. § 271(a) by using, selling, offering to sell, and/or importing semiconductor

7    devices that embody the inventions claimed in the '330 patent, within the United States and within this

8    District. In violation of the '330 patent, for example, Defendants' accused semiconductor devices include:

9    (a) a semiconductor substrate having a semiconductor device provided thereon; (b) a first dielectric layer

10   formed over the semiconductor substrate having a first opening; (c) a first conductor core filling the first

11   opening and connected to the semiconductor device; (d) an etch stop layer of silicon nitride formed over

12   the first dielectric layer and the first conductor core, the etch stop layer having a dielectric constant below

13   5.5; (e) a second dielectric layer formed over the etch stop layer and having a second opening open to the

14   first conductor core; and (f) a second conductor core filling the second opening and connected to the first

15   conductor core.

16   47.    Defendants have been and are engaged in one or more of these direct infringing activities

17   related to their semiconductor devices, including at least their STA8088 Satellite Receiver, and any other

18   semiconductor devices having transistor interconnects designed in accordance with claims 1, 4, and 5 of

19   the '330 patent and having a substantially similar design ("the '330 Accused Products").

20   48.    Defendants, directly and/or through their subsidiaries, affiliates, agents, and/or business

21   partners, have been and are now indirectly infringing the '330 patent, including at least claims 1, 4, and

22   5, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others.

23   Defendants had actual notice of the '330 patent and the infringement alleged herein on or about November

24   14, 2016, which was the date that Lone Star's counsel sent a letter to Defendants, attention Raj Krishnan,

25   providing notice of Defendants' infringement of the '330 patent. In addition, upon information and belief,

26   Defendants have numerous lawyers and other active agents of Defendants and of their owned and

27   controlled subsidiaries who regularly review patents and published patent applications relevant to

28   technology in the fields of the Patents in Suit, specifically including patents directed to semiconductor

---

Complaint for Patent Infringement
Case No. 3:17-cv-07206                                                                          15

devices issued to competitors such as AMD, the original assignee of the '330 patent. Upon information and belief, Defendants are assignees of 1,862 patents, including at least 19 patents prosecuted in the USPTO in the same classifications as the '330 patent, giving Defendants intimate knowledge of the art in fields relevant to this civil action. The timing, circumstances and extent of Defendants obtaining actual knowledge of the '330 patent prior to the commencement of this lawsuit will be confirmed during discovery.

49.     Upon gaining knowledge of the '330 patent, it was, or became, apparent to Defendants that the manufacture, sale, importing, offer for sale, and use of its '330 Accused Products result in infringement of the '330 patent. Upon information and belief, Defendants have continued and will continue to engage in activities constituting inducement of infringement, notwithstanding their knowledge, or willful blindness thereto, that the activities they induce result in infringement of the '330 patent under 35 U.S.C. § 271(b).

50.     The '330 Accused Products are intended for integration into products known to be sold widely in the United States. Defendants make semiconductor devices that embody the inventions claimed in the '330 patent, which devices infringe when they are imported into, or sold, used, or offered for sale in the United States. Defendants indirectly infringe by inducing customers (such as makers of mobile devices, handheld computers, cameras, data loggers, sports accessories, and other devices) to import products that integrate semiconductor devices embodying inventions claimed in the '330 patent, or to sell or use such products, or offer them for sale, in the United States.

51.     Defendants encourage customers, resellers, OEMs, or others to import into the United States and sell and use in the United States the '330 Accused Products embodying inventions claimed in the '330 patent with knowledge and the specific intent to cause the acts of direct infringement performed by these third parties. On information and belief, after Defendants obtained knowledge of the '330 patent, the '330 Accused Products have been and will continue to be imported into the United States and sold in large volumes by themselves and by others, such as customers, distributors, and resellers. Defendants are aware that the '330 Accused Products are integral components of the computer and mobile products incorporating them, that the infringing semiconductor devices are built into the computer and other products, and cannot be removed or disabled by a purchaser of the consumer products containing the

infringing semiconductor devices, such that Defendants' customers will infringe one or more claims of the '330 patent by incorporating such semiconductor devices in other products, and that subsequent importation, sale, and use of such products in the United States would be a direct infringement of the '330 patent. Therefore, Defendants are aware that their customers will infringe one or more claims of the '330 patent by selling, offering for sale, importing, and/or using the products as-sold and as-marketed by Defendants.

52.     Defendants directly benefit from and actively and knowingly encourage customers', resellers', and users' importation of these products into the United States and sale and use within the United States. Defendants actively encourage customers and downstream users, OEMs, and resellers to import, use, and sell in the United States the '330 Accused Products that they manufacture and supply, including through advertising, marketing, and sales activities directed at United States sales. On information and belief, Defendants are aware of the size and importance of the United States market for customers of Defendants' products, and also distribute or supply these products intended for importation, use, and sale in the United States. Defendants routinely market their infringing semiconductor devices to third parties for inclusion in products that are sold to customers in the United States, as well as directly to end-user customers. For example, Defendants have publicly stated that their semiconductor devices are primarily targeted for use in industrial, automotive, and consumer electronics, including mobile phones, tablets, computers, cameras, set-top boxes, global positioning receivers, data loggers, sports accessories, networking devices, IoT devices, power conversion devices, and metering devices for smart grids. Further, Defendants have stated that their positioning receiver products are primarily targeted for handheld computers, cameras, data loggers, sports accessories, and other products, all of which are widely sold and used in the United States. Defendants have numerous direct sales, distributors, and reseller outlets for these products in the United States. Defendants' marketing efforts show that they have specifically intended to and have induced direct infringement in the United States.

53.     Defendants also provide OEMs, manufacturers, importers, resellers, customers, and end users instructions, user guides, and technical specifications on how to incorporate the '330 Accused Products into electronics products that are made, used, sold, offered for sale in, and/or imported into the United States. When OEMs, manufacturers, importers, resellers, customers, and end users follow such

instructions, user guides, and technical specifications and embed the products in end products and make, use, offer to sell, sell, or import into the United States, they directly infringe one or more claims of the '330 patent. Defendants know that by providing such instructions, user guides, and technical specifications, OEMs, manufacturers, importers, resellers, customers, and end users follow them, and therefore directly infringe one or more claims of the '330 patent. Defendants thus know that their actions actively induce infringement.

54.     Defendants have engaged and will continue to engage in additional activities to specifically target the United States market for the '330 Accused Products and actively induce OEMs, manufacturers, importers, resellers, customers, and end users to directly infringe one or more claims of the '330 patent in the United States. For example, Defendants have showcased their positioning receiver technologies at various industry events and through written materials distributed in the United States, in an effort to encourage various OEMs, manufacturers, importers, resellers, customers, and end users to include the infringing technology in their computers, mobile devices, data loggers, sports accessories, and other products. These events are attended by the direct infringers mentioned above and generally by companies that make, use, offer to sell, sell, or import in the United States products that use semiconductor devices such as those made by Defendants.

55.     Defendants derive significant revenue by selling the '330 Accused Products to third parties who directly infringe the '330 patent in the United States. Defendants' extensive sales and marketing efforts, sales volume, and partnerships all evidence their intent to induce companies to infringe one or more claims of the '330 patent by, using, offering to sell, selling, or importing products that incorporate the '330 Accused Products, in the United States. Defendants have had specific intent to induce infringement or have been willfully blind to the direct infringement they are inducing.

56.     Upon information and belief, Defendants have continued and will continue to engage in activities constituting contributory infringement of the '330 patent, including at least claims 1, 4, and 5, pursuant to 35 U.S.C. § 271(c). Defendants contributorily infringe with knowledge that the '330 Accused Products, or the use thereof, infringe the '330 patent. Defendants knowingly and intentionally contributed to the direct infringement of the '330 patent by others by supplying these semiconductor devices that embody a material part of the claimed invention of the '330 patent and that are known by Defendants to

be specially made or adapted for use in an infringing manner. For example, and without limitation, the '330 Accused Products are used in end products, including computers, laptops, tablets, mobile telephones, cameras, data loggers, and sports accessories. The '330 Accused Products are not staple articles or commodities of commerce suitable for non-infringing use and are especially made for or adapted for use in infringing the '330 patent. There are no substantial uses of the '330 Accused Products that do not infringe the '330 patent. By contributing a material part of the infringing computing products sold, offered for sale, imported, and used by its customers, resellers, and users, Defendants have been and are now indirectly infringing the '330 patent pursuant to 35 U.S.C. § 271(c).

57.     Defendants' direct and indirect infringement of the '330 patent has injured Lone Star, and Lone Star is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless it ceases its infringing activities, Defendants will continue to injure Lone Star by infringing the '330 patent.

58.     On information and belief, Defendants acted egregiously and with willful misconduct in that their actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Defendants should have known about it. Defendants continue to infringe the '330 patent by using, selling, offering for sale, and importing in the United States the '330 Accused Products and to induce the direct infringement of others performing these acts, or they have acted at least in reckless disregard of Lone Star's patent rights. On information and belief, Defendants will continue their infringement notwithstanding actual knowledge of the '330 patent and without a good faith basis to believe that their activities do not infringe any valid claim of the '330 patent. All infringement of the '330 patent following Defendants' knowledge of the '330 patent is willful and Lone Star is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for:

1.     Judgment that the '188, '933, and '330 patents are each valid and enforceable;

2.     Judgment that the '188, '933, and '330 patents are infringed by Defendants;

3.     Judgment that Defendants' acts of patent infringement relating to the patents are willful;

4.    An award of damages arising out of Defendants' acts of patent infringement, together with pre-judgment and post-judgment interest;

5.    Judgment that the damages so adjudged be trebled in accordance with 35 U.S.C. § 284;

6.    An award of Plaintiff's attorneys' fees, costs, and expenses incurred in this action in accordance with 35 U.S.C. § 285; and

7.    Such other and further relief as the Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands trial by jury of all issues triable of right by a jury.

**<u>RESERVATION OF RIGHTS</u>**

Plaintiff's investigation is ongoing, and certain material information remains in the sole possession of Defendants or third parties, which will be obtained via discovery herein. Plaintiff expressly reserves the right to amend or supplement the causes of action set forth herein in accordance with Rule 15 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: December 19, 2017

/s/ Jon A. Birmingham
Jon A. Birmingham (CA SBN 271034)

Attorney for Plaintiff
LONE STAR SILICON INNOVATIONS LLC